CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
9/30/2021
JULIA C. DUDLEY, CLERK
BY: s/ A. Little
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**LYNCHBURG DIVISION**

| | | |
|---|---|---|
| ZACHARY R. COLEMAN,<br><br>*Plaintiff,*<br><br>v.<br><br>DEREK ALMARODE, in his individual capacity,<br>JOHN MARSHAL HIGGINS, in his individual capacity,<br>JESSICA WHITTEN, in her individual capacity,<br>JENNIFER AYERS, in her individual capacity,<br>GREG ROBERTS, in his individual capacity,<br>MATTHEW SLAGLE, in his individual capacity,<br>LYNN MUTERSPAUGH, in her individual capacity,<br>BRANDON CHITTUM, in his individual capacity,<br>BOONE BROCKENBROUGH, in his individual capacity,<br>ROGER BRYANT, in his individual capacity,<br>AARON McFARLANE, in his individual capacity,<br>AARON FAUBER, in his individual capacity,<br>LESLIE DORY, in her individual capacity,<br>COREY KIRBY, in his individual capacity,<br>DAN MORAN, in his individual capacity,<br>STEVEN VASSAR, in his individual capacity,<br>ROGER BRYANT, in his individual capacity,<br>DAVID ADAIR, in his individual capacity,<br>and an unknown number of JOHN and JANE DOEs,<br>each of whom is sued in<br>his or her individual capacity<br><br>*Defendants.* | ) | Case No. 6:20-cv-00049<br><br>JURY TRIAL DEMANDED |

**SECOND AMENDED COMPLAINT**

COMES NOW, the Plaintiff, Zachary Coleman, by counsel, alleges the following:

1. This Court has jurisdiction over this cause under 28 U.S. Code §1331 in that this case arises under 42 U.S. Code §1983 for redress of violations of Plaintiff's rights secured by the Eighth and Fourteenth Amendments to the United States Constitution.

2. Venue is proper in this Court under 28 U.S. Code §1391.

## Parties

3. Plaintiff, Zachary Coleman, is a citizen of the United States and of the Commonwealth of Virginia, currently residing in Rockbridge County. Plaintiff was a nineteen-year-old resident inmate of the Rockbridge Regional Jail from August 8, 2018 to Sept 7, 2018 and from December 28, 2018 to May 28, 2019.

4. Defendant John Marshal Higgins was the former superintendent of the Rockbridge Regional Jail and was responsible for implementing policies, supervision, hiring and discipline adequate to protect the inmates from cruel and unusual punishment, including assault by other inmates. Plaintiff is informed and believes, and based upon such belief alleges, that Higgins was vested with authority to set policy that would have prevented the injuries complained of below. Higgins is being sued in his individual capacity.

5. Defendant Derek Almarode is the current superintendent of the Rockbridge Regional Jail and was responsible for implementing policies, supervision, hiring and discipline adequate to protect the inmates from cruel and unusual punishment, including assault by other inmates. Plaintiff is informed and believes, and based upon such belief alleges, that Almarode was vested with authority to set policy that would have prevented the injuries complained of below. Almarode is being sued in his individual capacity.

6. The remaining defendants are John Does, Jane Does, or named individuals employed at the Rockbridge Regional Jail and as identified below.

## Summary of Facts

7. Plaintiff was a resident inmate at the Rockbridge Regional Jail from approximately August 8, 2018 until May 27, 2019. Plaintiff was released on bond from September 7, 2018 to December 28, 2018.

8. Prior to August 8, 2018, Defendants knew that George Jones, David Hosteter, Elijah Bobbit, and Tommy Coleman were dangerous criminals.

9. Prior to August 8, 2018, Defendants knew that George Jones was in the Aryan Brotherhood and had nearly killed a woman.

10. Prior to August 8, 2018, Defendants knew that Elijah Bobbitt was a dangerous child molester.

11. Despite that knowledge, certain Defendants specified below chose to assign Plaintiff to a cell with George Jones and David Hosteter on or about August 8, 2019.

12. Shortly after this assignment, Jones and Hosteter began assaulting Plaintiff multiple times per day. The worst assaults routinely consisted of Hosteter holding Plaintiff down on a bunk while Jones savagely beat Plaintiff about the legs and ankles until Plaintiff was bloody and bruised.

13. The campaign of abuse against Plaintiff also included attacking Plaintiff while he slept, at least one attempt to compel Plaintiff to consume an unknown pharmaceutical, and a threat to penetrate Plaintiff's anus with a toothbrush.

14. The beatings continued until August 19, 2018 (or thereabout) until Plaintiff was finally housed separately from Jones and Hostetter. Plaintiff suffered bruises, bled, and has suffered lasting psychological damage which has caused him to seek counseling.

15. At no point was Plaintiff made aware of a complaint procedure or any other means of redress.

16. Plaintiff was able to bond out of the Rockbridge Regional Jail on September 7, 2018.

17. When Plaintiff's mother asked Steven Vassar about the campaign of abuse that Jones and Hostetter inflicted upon Plaintiff, Vassar threatened that it would be "bad for Zach" if she talked to anyone about the abuse.

18. In early 2019, after Plaintiff had returned to the Rockbridge Regional Jail, certain defendants left Plaintiff alone with Jones in a hallway in the Rockbridge Regional Jail who used the occasion to threaten Plaintiff by approaching him in a menacing fashion while balling his fists.

19. In February, 2019 Plaintiff was assigned to a cell with Elijah Bobbitt and Tommy Coleman.

20. Starting in February 2019 and continuing through April 2019, Bobbitt and, to a lesser extent, Coleman pursued a campaign of sexual harassment and assault against Plaintiff.

21. This campaign included: making harassing comments, stuffing their hands down Plaintiff's pants, groping Plaintiff, and inserting a hand inside Plaintiff.

22. Plaintiff suffered bleeding from this campaign of sexual assault, including a bloody stool. Plaintiff has also suffered lasting psychological damage which has caused him to seek counseling.

23. This campaign was well known to certain defendants who did nothing to stop the abuse.

24. Again, Plaintiff was provided no means of making a complaint or otherwise seeking redress for his situation.

25. This campaign lasted until Plaintiff became very ill in April, 2019.

26. Plaintiff's illness began with a swollen cold sore, a "white head" on the side of his mouth, weakness, and fever. All symptoms became worse and worse over the next few days but

Plaintiff was denied any medical treatment by the Rockbridge Regional Jail even though he sought treatment daily

27. Plaintiff "blacked out" on the fifth day and woke up in a wheelchair.

28. On the sixth day, the inflammation had spread to his throat and jaw and he was finally sent to a hospital where he was found to have a 101.2-degree fever.

29. He was fed intravenously and was diagnosed with MRSA and cellulitis at the hospital.

30. It was only Plaintiff's medical emergency that finally separated him from the Elijah Bobbitt and ended the campaign of sexual harassment.

**Count I: Failure to protect from cruel and unusual punishment (a campaign of assault) by assigning Plaintiff to the same pod as Jones and Hostetter in August, 2018**

31. Plaintiff re-alleges paragraphs 1 through 30 and incorporates them into this Count by reference.

32. The Count I Defendants are John Marshall Higgins, Derek Almarode, Matt Slagle, Brandon Chittum, Jessica Whitten, Steve Vassar, and at least one JOHN DOE defendant or some subset of the foregoing.

33. Upon information and belief, the 500 pod in the Rockbridge Regional Jail is reserved exclusively for inmates charged with sexual offenses to protect them from inmates not charged with sexual offenses. Upon information and belief, this is a policy promulgated by John Marshall Higgins and left in place by his successor Derek Almarode or promulgated by Derek Almarode alone.

34. Opposing counsel represents that Matt Slagle booked George Jones into the Rockbridge Regional Jail some time prior to August, 2018 and assigned Jones to the 500 pod.

35. Upon information and belief, the booking process includes a review of the inmate's criminal history by the booking officer to facilitate proper classification. Slagle therefore knew that George Jones was accused of attempted murder, was a member of the Aryan Brotherhood, and was violent.

36. Slagle assigned Jones to the 500 pod even though Jones was not charged with a sexual offense and even though Slagle knew that Jones was a danger to other inmates because of his violent history and gang affiliation.

37. Upon information and belief, all inmates and staff, including the remaining Count I defendants, at the Rockbridge Regional Jail learned that Jones was a violent inmate who had been accused of attempted murder and was a member of the Aryan Brotherhood.

38. Opposing counsel represents that Brandon Chittum booked David Hostetter into the Rockbridge Regional Jail some time prior to August, 2018 and assigned Hostetter to the 500 pod.

39. Upon information and belief, the booking process includes a review of the inmate's criminal history by the booking officer to facilitate proper classification. Chittum therefore knew that Hostetter was accused of soliciting sex from a minor and was dangerous to younger inmates.

40. Upon information and belief, Chittum assigned Hostetter to the 500 pod, even though it did then house younger inmates.

41. Upon information and belief, all inmates and staff, including the remaining Count I defendants, at the Rockbridge Regional Jail learned that Hostetter was accused of soliciting sex from a minor and was dangerous to younger inmates.

42. Opposing counsel represents that Jessica Whitten booked Plaintiff into the Rockbridge Regional Jail on August 8, 2018 and assigned Plaintiff to the 500 pod.

43. Upon information and belief, the booking process includes a review of the inmate's file by the booking officer to facilitate proper classification. Whitten therefore knew that Plaintiff was nineteen years old at the time. Whitten assigned Plaintiff to the 500 pod, even though it did then house Jones, who was a threat to every inmate and did not belong in a sex-offender pod in the first place, and Hostetter, who was a threat to younger inmates.

44. Upon information and belief, it was instead some other JOHN DOE defendant who actually booked Plaintiff into the Rockbridge Regional Jail on August 8, 2018 and assigned Plaintiff to the 500 pod. Plaintiff remembers that it was a male corrections officer that processed Plaintiff through intake in August, 2018.

45. This JOHN DOE defendant would have taken Plaintiff through the booking process and would have reviewed Plaintiff's file. This John Doe Defendant therefore knew that Plaintiff was nineteen years old at the time. This John Doe Defendant assigned Plaintiff to the 500 pod, even though it did then house Jones, who was a threat to every inmate and did not belong in a sex-offender pod in the first place, and Hostetter, who was a threat to younger inmates.

46. Upon information and belief, Steven Vassar approved all housing changes in the Rockbridge Regional Jail during Plaintiff's confinement there. Upon further information and belief, Steven Vassar knew that Plaintiff was nineteen years old; knew that George Jones was accused of attempted murder, was a member of the Aryan Brotherhood, and was violent; and knew that Hostetter was accused of soliciting sex from a minor and was dangerous to younger

inmates. Despite this knowledge, Steven Vassar approved the assignment of the vulnerable and youthful Plaintiff to the same pod as George Jones and David Hostetter.

47. Upon information and belief, John Marshall Higgins promulgated a policy that allowed the assignment of Plaintiff to the same pod with dangerous criminals like Jones and Hostetter, which policy persisted after his resignation from the Rockbridge Regional Jail to the time of Plaintiff's incarceration there. This policy failure was due to inadequate training, inadequate supervision, deficient hiring, inexcusable incompetence, or some combination of the foregoing.

48. Alternatively, and upon information and belief, John Marshall Higgins promulgated a policy that did not allow the assignment of Plaintiff to the same pod with dangerous criminals like Jones and Hostetter but failed to enforce it properly, and which failure persisted after his resignation from the Rockbridge Regional Jail to the time of Plaintiff's incarceration there. This policy failure was due to inadequate training, inadequate supervision, deficient hiring, inexcusable incompetence, or some combination of the foregoing.

49. Upon information and belief, Derek Almarode promulgated a policy that allowed the assignment of Plaintiff to the same pod with dangerous criminals like Jones and Hostetter. This policy failure was due to inadequate training, inadequate supervision, deficient hiring, inexcusable incompetence, or some combination of the foregoing.

50. Alternatively, and upon information and belief, Derek Almarode promulgated a policy that did not allow the assignment of Plaintiff to the same pod with dangerous criminals like Jones and Hostetter but failed to enforce it properly. This policy failure was due to inadequate training, inadequate supervision, deficient hiring, inexcusable incompetence, or some combination of the foregoing.

51. Assigning Plaintiff to the same pod as George Jones and David Hostetter was the proximate cause of Plaintiff's multiple assaults by George Jones and David Hostetter because Plaintiff was unable to defend himself against Jones and Hostetter while they were all housed in the same pod.

52. Assigning Plaintiff to the same pod as George Jones and David Hostetter was the proximate cause of Plaintiff's multiple assaults by George Jones and David Hostetter also because Matt Slagle, Brandon Chittum, Jessica Whitten, Steve Vassar, and JOHN DOE knew the relevant facts about Jones, Hostetter, and Plaintiff yet failed to prevent Plaintiff being assigned to the same pod as Jones and Hostetter.

53. Plaintiff was assigned to the same pod as George Jones and David Hostetter in deliberate disregard to the reasonably foreseeable danger of assault that Jones and Hostetter posed to other inmates, including Plaintiff.

54. Assigning Plaintiff to the same pod as Jones and Hostetter constituted callous and deliberate indifference to Plaintiff's safety and resulted in the assaults and the consequent injuries, including psychological damage. The assignment was a violation of Plaintiff's Eighth Amendment constitutional right to be free from assault by fellow inmates or some other right and is actionable under 42 U.S.C. § 1983. Such violation was also attributable to the policy deficiencies alleged in paragraphs above. The Count I Defendants, or some subset of Defendants, committed said violation while acting under color of state law.

**Count II: Failure to protect from cruel and unusual punishment (a continuing campaign of assault) by failing to reassign Jones and Hosteter to a different pod earlier in August, 2018**

55. Plaintiff re-alleges paragraphs 1 through 30 and incorporates them into this Count by reference.

56. The Count II defendants are: Steven Vassar, David Adair, Boone Brockenbrough, Matthew Slagle, Brandon Chittum, Aaron Fauber, Corey Kirby, Jennifer Ayers, Greg Roberts, Leslie Dory, "Burke" (a male correctional officer), "Joyce" (a female correctional officer), "Strickler" (a male correctional officer), "Melissa" (a female correctional officer), and an unknown number of other JOHN DOES, or some subset of the foregoing.

57. Opposing counsel represents that "any uniformed officer [at the Rockbridge Regional Jail] has the discretion to make housing adjustments. At any time, with justifiable reasons, the officer may move or reassign an inmate to another cell or housing unit."

58. The Count II defendants include all those uniformed officers who knew Plaintiff was suffering an ongoing campaign of assaults during the period August 8, 2018 to August 19, 2018 (or similar dates) (hereinafter, the "first assault campaign").

59. Upon information and belief, any correctional officer who had conducted rounds during the first assault campaign would have known about the assaults because (a) the Rockbridge Regional Jail is so small that Plaintiff's screams could be heard throughout the facility, and (b) the assaults were so frequent that most, if not all, correctional officers would have witnessed the assaults during rounds or via surveillance cameras.

60. Plaintiff also remembers that the Count II defendants identified above knew of the first assault campaign because he heard them make reference to it or he knew they witnessed it.

61. Upon information and belief, there was a policy in the Rockbridge Regional Jail prohibiting inmates from ever entering a cell to which they were not assigned.

62. Most, if not all, of the first assault campaign occurred in Plaintiff's cell when Jones and Hostetter entered it to beat Plaintiff multiple times per day during that period.

63. Any correctional officer witnessing Jones and/or Hostetter in Plaintiff's cell would know that Jones and/or Hostetter were violating jail policy whether they were attacking Plaintiff or not because Jones and Hostetter were not assigned to the same cell as Plaintiff.

64. Failing to reassign Plaintiff and Jones/Hostetter to separate pods was the proximate cause of Plaintiff's continued injury in the first assault campaign because Plaintiff was unable to defend himself against Jones and Hostetter while they were all still housed in the same pod.

65. Failing to reassign Plaintiff and Jones/Hostetter to separate pods was also the proximate cause of Plaintiff's continued injury in the first assault campaign because the Count II defendants knew the first assault campaign was occurring and continuing yet the Count II defendants did nothing to separate Plaintiff from Jones/Hostetter.

66. Plaintiff was left in the same pod as George Jones and David Hostetter in deliberate disregard to the reasonably foreseeable danger of continued assault on Plaintiff in the first assault campaign.

67. Failing to reassign Plaintiff and Jones/Hostetter to separate pods constituted callous and deliberate indifference to Plaintiff's safety and resulted in the assaults and the consequent injuries, including psychological damage. The assignment was a violation of Plaintiff's Eighth Amendment constitutional right to be free from assault by fellow inmates or some other right and is actionable under 42 U.S.C. § 1983. The Count II Defendants, or some subset of Defendants, committed said violation while acting under color of state law.

68. Upon information and belief, the Rockbridge Regional Jail had a policy to separate inmates who assaulted other inmates and further prohibit them from having contact with each other as long as they were all incarcerated at that facility (hereinafter, the "no contact"

policy). The Count II defendants, acting under color of state law, failed to enforce this policy until the first assault campaign had persisted for more than a week, leading to repeated, daily assaults and injuries to Plaintiff as Jones and Hostetter attacked him until Plaintiff was moved to a new cell on August 19, 2018. Such failure was due to inadequate training, inadequate supervision, deficient hiring, inexcusable incompetence or some combination of the foregoing.

**Count III: Failure to provide complaint procedure (A)**

69. Plaintiff re-alleges paragraphs 1 through 30 and incorporates them into this Count by reference.

70. The Count III defendant is Derek Almarode.

71. After the first assault campaign, Plaintiff had no means of redress within the Rockbridge Regional Jail.

72. 28 CFR § 115.251 requires local jails to "provide multiple internal ways for residents to privately report sexual abuse and sexual harassment, retaliation by other residents or staff for reporting sexual abuse and sexual harassment, and staff neglect or violation of responsibilities that may have contributed to such incidents." (emphasis supplied)

73. Plaintiff was never made aware of any complaint procedure whatsoever (whether related to sexual abuse or not) within the Rockbridge Regional Jail.

74. Plaintiff was never provided with a "handbook" describing the jail's rules and policies. Upon information and belief, there was a handbook available on tablets used by the inmates twice a week for a handful of hours. But even when Plaintiff and other inmates were allowed use of a tablet, none of them were able to open or access the handbook.

75. Upon information and belief, multiple inmates complained about this lack of access to a handbook but nothing was ever done about the situation while Plaintiff was incarcerated at the Rockbridge Regional Jail.

76. If a complaint procedure was available to inmates anywhere, Plaintiff was functionally denied access to it.

77. Upon information and belief, Derek Almarode was responsible for setting policy at the Rockbridge Regional Jail and failed to enact a policy, custom, or practice adequate to provide a complaint process. Such failure was due to inadequate training, inadequate supervision, deficient hiring, inexcusable incompetence, or some combination of the foregoing.

78. In deliberate disregard to the reasonably foreseeable danger of violation of an inmate's Eighth Amendment rights or some other right(s), Derek Almarode failed to provide or implement a complaint process to effect redress of such violations.

79. Failing to provide or implement a complaint process constituted callous and deliberate indifference to Plaintiff's safety and resulted in the continued campaign of assaults and the consequent injuries. This failure violated Plaintiff's Eighth Amendment constitutional right to be free from cruel and unusual punishment or some other right(s) and is actionable under 42 U.S.C. § 1983. Derek Almarode committed said violation while acting under color of state law.

**Count IV: Punishment of Plaintiff rather than those who assaulted him**

80. Plaintiff re-alleges paragraphs 1 through 30 and incorporates them into this Count by reference.

81. The Count IV defendants are Jennifer Ayers and Steven Vassar.

82. Upon information and belief, Jennifer Ayers and Steven Vassar both knew that Plaintiff had been the victim of Jones and Hostetter in the first assault campaign.

83. Opposing counsel represents that Jennifer Ayers moved Plaintiff away from Jones and Hostetter on or about August 19, 2018 and into cell 203, also known as the drunk tank.

84. Upon information and belief, Steven Vassar approved all housing changes in the Rockbridge Regional Jail during Plaintiff's confinement there.

85. Upon information and belief, moving an inmate to the drunk tank was used as a punishment in the Rockbridge Regional Jail.

86. Despite knowing that Plaintiff was the victim of the first assault campaign, Vassar and Ayers punished Plaintiff by moving him to the drunk tank.

87. Vassar and Ayers did this in deliberate disregard of Plaintiff's right to be free from arbitrary and capricious punishment or cruel and unusual punishment.

88. Failing to provide or implement a process to separate victims from perpetrators without further punishing victims constituted callous and deliberate indifference to Plaintiff's safety and resulted in further injury. This failure violated Plaintiff's Eighth Amendment constitutional right to be free from cruel and unusual punishment or some other right and is actionable under 42 U.S.C. § 1983. Vassar and Ayers committed said violation while acting under color of state law.

**Count V: Witness intimidation and denial of right to counsel**

89. Plaintiff re-alleges paragraphs 1 through 30 and incorporates them into this Count by reference.

90. The Count V defendant is Steve Vassar.

91. Shortly after the first assault campaign ended, Plaintiff's mother complained to Steve Vassar at the Rockbridge Regional Jail about the beatings her son had suffered.

92. Upon information and belief, Steve Vassar told Plaintiff's mother that she should not tell anyone about the first assault campaign because it would be "bad for Zach [the Plaintiff]" who was still incarcerated in Vassar's jail.

93. Upon information and belief, this was a threat to keep silent about abuse in the jail or to suffer even further abuse in the jail in violation of Virginia law.

94. At about the same time, Plaintiff requested that Vassar provide Plaintiff an opportunity to confer with his attorney. Plaintiff told Vassar he wanted to confer with his attorney about a bond hearing but also wanted to seek counsel regarding the first assault campaign and whatever means of redress he might have.

95. Instead of facilitating Plaintiff's request, Vassar instead told Plaintiff that Vassar had called Plaintiff's attorney himself and asked about a bond hearing on Plaintiff's behalf.

96. Vassar denied Plaintiff access to his attorney and threatened a witness in an effort to cover up mismanagement and abuse in the Rockbridge Regional Jail. As such, he violated Plaintiff's constitutional rights and such violation is actionable under 42 U.S.C. § 1983. Vassar perpetrated such violations while acting under color of state law.

**Count VI: Failure to protect from cruel and unusual punishment by leaving Plaintiff alone with Jones**

97. Plaintiff re-alleges paragraphs 1 through 30 and incorporates them into this Count by reference.

98. The Count VI defendants are Aaron Fauber and a John Doe defendant known to Plaintiff only as "Higganbotham."

99. Upon information and belief, the Rockbridge Regional Jail ordered that there be no contact between Plaintiff and George Jones pursuant to the no contact policy after the first assault campaign.

100. At some point in early 2019, Aaron Fauber and Higganbotham were taking inmates to the visitation area.

101. In contravention of the no contact policy, Fauber and Higganbotham left Plaintiff in a hallway with George Jones who used the occasion to approach Plaintiff in a menacing fashion while balling his fists. Plaintiff was protected by a third inmate until corrections officers returned to separate Plaintiff and Jones.

102. Fauber and Higganbotham knew that Plaintiff and Jones could not be out of their pods and on the way to visitation at the same time because of the no contact policy and the first assault campaign.

103. Fauber and Higganbotham failed to follow the no contact policy in deliberate disregard to the danger that Jones would (again) pose to Plaintiff. Such failure was due to inadequate training, inadequate supervision, deficient hiring, inexcusable incompetence, or some combination of the foregoing. Further, this failure constituted callous and deliberate indifference to Plaintiff's safety and resulted in further injury. This failure violated Plaintiff's Eighth Amendment constitutional right to be free from cruel and unusual punishment or some other right(s) and is actionable under 42 U.S.C. § 1983. Fauber and Higganbotham committed said violation while acting under color of state law.

**Count VII: Failure to protect from cruel and unusual punishment (a campaign of sexual assault) by assigning Plaintiff to the same cell as Bobbitt and Coleman in February, 2019**

104. Plaintiff re-alleges paragraphs 1 through 30 and incorporates them into this Count by reference.

105. The Count VII Defendants are John Marshall Higgins, Derek Almarode, Leslie Dory, Lynn Muterspaugh, Corey Kirby, and Steven Vassar.

106. Upon information and belief, the 500 pod in the Rockbridge Regional Jail is reserved exclusively for inmates charged with sexual offenses to protect them from inmates not charged with sexual offenses. Upon information and belief, this is a policy promulgated by John

Marshall Higgins and left in place by his successor Derek Almarode or promulgated by Derek Almarode alone.

107. Opposing counsel represents that Leslie Dory moved Thomas Coleman into cell 507 on September 21, 2018 where he remained until March 11, 2019. Upon information and belief, Leslie Dory knew that Thomas Coleman had been convicted of manufacturing child pornography. Dory therefore knew that Coleman was dangerous to younger inmates. Dory assigned Coleman to the 500 pod, even though it did then house younger inmates.

108. Upon information and belief, all inmates and staff, including the remaining Count VII defendants, at the Rockbridge Regional Jail learned that Thomas Coleman had been convicted of manufacturing child pornography and was therefore dangerous to younger inmates.

109. Opposing counsel represents that Lynn Mutserspaugh moved Elijah Bobbitt into cell 507 on or about November 13, 2018 where he stayed until April 22, 2019. Upon information and belief, Lynn Muterspaugh knew that Elijah Bobbitt sexually preyed upon young men because Bobbitt had been incarcerated there for similar crimes since 2016, because Bobbitt's sex crimes against young men had been in the local news, because the Rockbridge Regional Jail was very small and Bobbitt was the most notorious inmate, and because the whole correctional staff knew Bobbitt was being investigated by the State police for mob assault within the Jail. Despite this knowledge, Muterspaugh assigned Bobbitt to the 500 pod even though there were younger, vulnerable inmates housed there.

110. Upon information and belief, all inmates and staff, including the remaining Count VII defendants, at the Rockbridge Regional Jail knew that Bobbitt was a notorious inmate who preyed upon younger inmates for the reasons stated above.

111. Opposing counsel represents that Cory Kirby moved Plaintiff into cell 507 with Bobbitt and Thomas Coleman on or about January 25, 2019. Upon information and belief, Cory Kirby knew that Bobbitt and Coleman were dangerous to younger people but assigned the nineteen year old Plaintiff to cell 507 with them anyway.

112. Starting in February 2019 and continuing through April 2019, Bobbitt and, to a lesser extent, Coleman pursued a campaign of sexual harassment and assault against Plaintiff (hereinafter, the "second assault campaign").

113. This campaign included: making harassing comments, stuffing their hands down Plaintiff's pants, groping Plaintiff, and inserting a hand inside Plaintiff.

114. Plaintiff suffered bleeding from this campaign of sexual assault, including a bloody stool. Plaintiff has also suffered lasting psychological damage which has caused him to seek counseling.

115. Upon information and belief, Steven Vassar approved all housing changes in the Rockbridge Regional Jail during Plaintiff's confinement there. Upon further information and belief, Steven Vassar knew that Plaintiff was nineteen years old, knew that Elijah Bobbitt was a notorious sex offender who preyed upon young men, and knew that Thomas Coleman had been convicted of manufacturing child pornography and was therefore dangerous to younger inmates. Despite this knowledge, Steven Vassar approved the assignment of the vulnerable and youthful Plaintiff to the same cell as Elijah Bobbitt and Thomas Coleman.

116. Upon information and belief, John Marshall Higgins promulgated a policy that allowed the assignment of Plaintiff to the same pod with dangerous criminals like Bobbitt and Coleman, which policy persisted after his resignation from the Rockbridge Regional Jail to the time of Plaintiff's incarceration there. This policy failure was due to inadequate training,

inadequate supervision, deficient hiring, inexcusable incompetence, or some combination of the foregoing.

117. Alternatively and upon information and belief, John Marshall Higgins promulgated a policy that did not allow the assignment of Plaintiff to the same pod with dangerous criminals like Jones and Hostetter but failed to enforce it properly, and which failure persisted after his resignation from the Rockbridge Regional Jail to the time of Plaintiff's incarceration there. This policy failure was due to inadequate training, inadequate supervision, deficient hiring, inexcusable incompetence, or some combination of the foregoing.

118. Derek Almarode promulgated a policy that allowed the assignment of Plaintiff to the same pod with dangerous criminals like Jones and Hostetter. This policy failure was due to inadequate training, inadequate supervision, deficient hiring, inexcusable incompetence, or some combination of the foregoing.

119. Alternatively, Derek Almarode promulgated a policy that did not allow the assignment of Plaintiff to the same pod with dangerous criminals like Jones and Hostetter but failed to enforce it properly. This policy failure was due to inadequate training, inadequate supervision, deficient hiring, inexcusable incompetence, or some combination of the foregoing.

120. Assigning Plaintiff to the same pod as Elijah Bobbitt and Thomas Coleman was the proximate cause of Plaintiff's multiple assaults by Elijah Bobbitt and Thomas Coleman because Plaintiff was unable to defend himself against Elijah Bobbitt and Thomas Coleman while they were all housed in the same cell.

121. Assigning Plaintiff to the same pod as Elijah Bobbitt and Thomas Coleman was the proximate cause of Plaintiff's multiple assaults by Elijah Bobbitt and Thomas Coleman also because Leslie Dory, Lynn Muterspaugh, Corey Kirby, and Steven Vassar knew the relevant

facts about Bobbitt, Coleman, and Plaintiff yet failed to prevent Plaintiff being assigned to the same cell as Bobbitt and Coleman.

122. Plaintiff was assigned to the same cell as Elijah Bobbitt and Thomas Coleman in deliberate disregard to the reasonably foreseeable danger of sexual assault that Bobbitt and Coleman posed to Plaintiff.

123. Assigning Plaintiff to the same cell as Bobbitt and Coleman constituted callous and deliberate indifference to Plaintiff's safety and resulted in the assaults and the consequent injuries suffered during the second assault campaign. The assignment was a violation of Plaintiff's Eighth Amendment constitutional right to be free from assault by fellow inmates or some other right and is actionable under 42 U.S.C. § 1983. Such violation was also attributable to the policy deficiencies alleged in paragraphs above. The Count VII Defendants, or some subset of Defendants, committed said violation while acting under color of state law.

**Count VIII: Failure to protect from cruel and unusual punishment (a continuing campaign of sexual assault) by failing to reassign Bobbitt and Coleman to a different cell in February to April, 2019**

124. Plaintiff re-alleges paragraphs 1 through 30 and incorporates them into this Count by reference.

125. The Count VIII defendants are: Steven Vassar, David Adair, Boone Brockenbrough, Matthew Slagle, Brandon Chittum, Aaron Fauber, Corey Kirby, Jennifer Ayers, Greg Roberts, Leslie Dory, "Burke" (a male correctional officer), "Joyce" (a female correctional officer), "Strickler" (a male correctional officer), "Melissa" (a female correctional officer), and an unknown number of JOHN DOES, or some subset of the foregoing.

126. Opposing counsel represents that "any uniformed officer [at the Rockbridge Regional Jail] has the discretion to make housing adjustments. At any time, with justifiable reasons, the officer may move or reassign an inmate to another cell or housing unit."

127. The Count VIII defendants include all those uniformed officers who knew Plaintiff was suffering an ongoing campaign of assaults during the period February-April, 2019 (a/k/a the "second assault campaign").

128. Upon information and belief, any correctional officer who had conducted rounds during the first assault campaign would have known about the assaults because the assaults were so frequent that most, if not all, correctional officers would have witnessed the assaults during rounds or via surveillance cameras.

129. Plaintiff also remembers that the Count VIII defendants identified above knew of the second assault campaign because he heard them make reference to it or he knew they witnessed it.

130. Failing to reassign Plaintiff and Bobbitt/Coleman to separate pods was the proximate cause of Plaintiff's continued injury in the second assault campaign because Plaintiff was unable to defend himself against Bobbitt and Coleman while they were all still housed in the same pod and cell.

131. Failing to reassign Plaintiff and Bobbitt/Coleman to separate pods was also the proximate cause of Plaintiff's continued injury in the second assault campaign because the Count VIII defendants knew the second assault campaign was occurring and continuing yet the Count VIII defendants did nothing to separate Plaintiff from Bobbitt/Coleman.

132. Plaintiff was left in the same pod as Bobbitt/Coleman in deliberate disregard to the reasonably foreseeable danger of continued assault on Plaintiff in the second assault campaign.

133. Failing to reassign Plaintiff and Bobbitt/Coleman to separate pods constituted callous and deliberate indifference to Plaintiff's safety and resulted in the assaults and the consequent injuries. The assignment was a violation of Plaintiff's Eighth Amendment constitutional right to be free from assault by fellow inmates or some other right and is actionable under 42 U.S.C. § 1983. The Count VIII Defendants, or some subset of Defendants, committed said violation while acting under color of state law.

134. Upon information and belief, the Rockbridge Regional Jail had a policy to separate inmates who assaulted other inmates and further prohibit them from having contact with each other as long as they were all incarcerated at that facility (the "no contact" policy). The Count VIII defendants, acting under color of state law, failed to enforce this policy at all and Plaintiff was not removed from the cell until he suffered a medical emergency that required transportation to the hospital in April 2019. Such failure was due to inadequate training, inadequate supervision, deficient hiring, inexcusable incompetence or some combination of the foregoing.

**Count IX: Failure to provide complaint procedure (B)**

135. Plaintiff re-alleges paragraphs 1 through 30 and incorporates them into this Count by reference.

136. The Count IX defendant is Derek Almarode.

137. During the second assault campaign, Plaintiff had no means of redress within the Rockbridge Regional Jail.

138. 28 CFR § 115.251 requires local jails to "provide multiple internal ways for residents to privately report sexual abuse and sexual harassment, retaliation by other residents or staff for reporting sexual abuse and sexual harassment, and staff neglect or violation of responsibilities that may have contributed to such incidents." (emphasis supplied)

139. Plaintiff was never made aware of any complaint procedure whatsoever (whether related to sexual abuse or not) within the Rockbridge Regional Jail.

140. Plaintiff was never provided with a "handbook" describing the jail's rules and policies. Upon information and belief, there was a handbook available on tablets used by the inmates twice a week for a handful of hours. But even when Plaintiff and other inmates were allowed use of a tablet, none of them were able to open or access the handbook.

141. Upon information and belief, multiple inmates complained about this lack of access to a handbook but nothing was ever done about the situation while Plaintiff was incarcerated at the Rockbridge Regional Jail.

142. If a complaint procedure was available to inmates anywhere, Plaintiff was functionally denied access to it.

143. Derek Almarode was responsible for setting policy at the Rockbridge Regional Jail and failed to enact a policy, custom, or practice adequate to provide a complaint process. Such failure was due to inadequate training, inadequate supervision, deficient hiring, inexcusable incompetence, or some combination of the foregoing.

144. In deliberate disregard to the reasonably foreseeable danger of violation of an inmate's Eighth Amendment rights or some other right(s), Derek Almarode failed to provide or implement a complaint process to effect redress of such violations.

145. Failing to provide or implement a complaint process constituted callous and deliberate indifference to Plaintiff's safety and resulted in the continued campaign of assaults and the consequent injuries. This failure violated Plaintiff's Eighth Amendment constitutional right to be free from cruel and unusual punishment or some other right(s) and is actionable under 42 U.S.C. § 1983. Derek Almarode committed said violation while acting under color of state law.

**Count X: Failure to protect from cruel and unusual punishment by failing to provide medical care**

146. Plaintiff re-alleges paragraphs 1 through 30 and incorporates them into this Count by reference.

147. The Count X defendants are Roger Bryant and at least three JANE DOEs serving as nurses at the Rockbridge Regional Jail.

148. Opposing counsel represents that Roger Bryant "had authority to order and/or provide medical treatment for or to [Plaintiff]."

149. Upon information and belief, Plaintiff sought treatment from at least three different female nurses at the Rockbridge Regional Jail in April, 2019. Plaintiff does not know their identities.

150. Plaintiff's illness began in April, 2019 with a swollen cold sore, a "white head" on the side of his mouth, weakness, and fever.

151. All symptoms became worse and worse over the next few days but Plaintiff was denied any medical treatment by the Rockbridge Regional Jail medical staff despite requesting medical treatment each day.

152. Plaintiff "blacked out" on the fifth day and woke up in a wheelchair.

153. On the sixth day, the inflammation had spread to his throat and jaw and he was finally sent to a hospital where he was found to have a 101.2-degree fever.

154. He was fed intravenously and was diagnosed with MRSA and cellulitis at the hospital.

155. The count X defendants were aware that Plaintiff was seriously ill because he sought treatment from them daily.

156. In deliberate disregard to the reasonably foreseeable danger of life-threatening illness, the Count X defendant failed to provide adequate medical care to Plaintiff.

157. Failing to provide adequate medical care to Plaintiff constituted callous and deliberate indifference to Plaintiff's safety and resulted in a much more severe and life-threatening illness than he would have otherwise suffered. The denial of adequate medical care was a violation of Plaintiff's Eighth Amendment constitutional right to be free from cruel and unusual punishment or some other right and is actionable under 42 U.S.C. § 1983. The Count X Defendants committed said violation while acting under color of state law.

WHEREFORE, the Plaintiff prays that judgement be entered:

A. Ordering Defendants to pay Plaintiff the sum of $3,000,000 in actual damages for physical injuries, mental injuries, and any other injuries;

B. Ordering Defendants to pay Plaintiff the sum of $3,000,000 in punitive damages;

C. Ordering Defendants to pay all costs incurred in prosecution of this lawsuit, including reasonable attorney's fee pursuant to 42 USC § 1988(b);

D. Ordering that Defendants alter, amend, and/or implement such policies and procedures, surveillance methods and classification policies and/or procedures to

ensure that inmates are not subjected to the same risk of assault, abuse, and intimidation to which Plaintiff was subjected; and

E. Granting such other relief as this Court deems just and proper.

ZACHARY R. COLEMAN

/s/ Charles H. Nave
Plaintiff's Counsel

Charles H. Nave, Esq. (VSB No: 43585)
CHARLES H. NAVE, P.C.
316 Mountain Avenue, S.W.
Roanoke, Virginia 24016
(540) 345-8848
(540) 301-4926 facsimile
charlie@nave-law.com
*Counsel for Plaintiff*